UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND,

                                Plaintiffs,                      **23-CV-9703 (LTS) (VF)**

         -against-                                  **OPINION AND ORDER**

MENSCH MILLWORK CORP.,

                                Defendant.
-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge:**

       Presently before the Court is a motion by Trustees of The New York City District Council of Carpenters Pension Fund ("Plaintiffs") to compel Mensch Millwork Corp. ("Defendant") to make interim payments of withdrawal liability pursuant to the "pay now, dispute later" requirement of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub. L. No. 96-364, 94 Stat. 1208. See ECF Nos. 38, 41. For the reasons stated herein, the motion is **GRANTED**.

## BACKGROUND

       Plaintiffs, Trustees of the New York City District Council of Carpenters Pension Fund (the "Fund"), are employer and employee trustees of a multiemployer labor-management trust fund organized and operated in accordance with ERISA. ECF No. 1 at ¶ 4. The Trustees are fiduciaries of the Fund within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). Id. The Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). Id.

As is relevant to the instant motion, Defendant entered into a collective bargaining agreement ("CBA") with the New York City District Council of Carpenters (the "Union"). Id. at ¶ 6. The CBA required Defendant to make specified hourly contributions to the Fund, at rates negotiated and set by the Union, for all covered work performed within the trade and geographical jurisdiction of the Union. Id.; ECF No. 40 at ¶ 5. On June 30, 2019, Defendant's contributions to the Fund declined such that the Fund determined that a complete withdrawal was triggered as of June 30, 2019, as defined by the MPPAA. ECF No. 1 at ¶¶ 10-11; ECF No. 40 at ¶ 6.

On April 3, 2023, the Fund sent Defendant a letter with the withdrawal liability assessment. ECF No. 1 at ¶ 11; ECF No. 40 at ¶ 8. As required pursuant to Sections 4202 and 4219(b)(1) of ERISA, the letter notified Defendant of the Fund's determination that Defendant had completely withdrawn from the Fund as of June 30, 2019, when Defendant's contributions declined because it ceased performing covered work under the applicable CBA. ECF No. 1 at ¶ 11; ECF No. 40 at ¶ 8; see also ECF No. 40-2. The letter notified Defendant that its withdrawal liability was assessed at $241,026, to be paid in quarterly installments of $19,393.75 for 13 quarters, plus a final payment of $10,620.18. ECF No. 1 at ¶ 12; ECF No. 40 at ¶ 9.[1] Defendant's first quarterly payment was due on May 1, 2023. ECF No. 1 at ¶ 13.a; ECF No. 40 at ¶ 9.

Defendant did not make the first quarterly installment payment of $19,393.75. ECF No. 1 at ¶ 14; ECF No. 40 at ¶ 10. Following this missed payment, the Fund sent Defendant a "Notice of Missed Payment" on July 27, 2023. ECF No. 1 at ¶ 15; ECF No. 40 at ¶ 11; see also ECF No. 40-3. This notice advised Defendant that if the first quarterly installment payment was not

---

[1] For a complete breakdown of the determination of payment and length of payment period, see ECF No. 40-1 at 13.

2

received within 60 days from the date of the notice, Defendant would be in default and the entire withdrawal liability assessment would be accelerated. ECF No. 1 at ¶ 15; ECF No. 40 at ¶ 11.

Plaintiffs commenced the underlying action on November 3, 2023, seeking to collect employer withdrawal liability under ERISA and the MPPAA. ECF No. 1 at ¶¶ 1, 18. As of February 18, 2025, Defendant had failed to make eight quarterly payments, totaling $154,950 in past-due withdrawal liability payments. ECF No. 1 at ¶¶ 13-14, 16; ECF No. 40 at ¶¶ 12-13.

Plaintiffs now seek to compel Defendant to make interim withdrawal liability payments while this suit is pending. ECF No. 41. Defendant does not dispute that it entered into a collective bargaining agreement with the Union that obligated it to contribute to the Fund, or that it made contributions to the Fund for a period of years. ECF No. 43 at ¶¶ 11-15. Instead, Defendant contends that it is not an "employer" under the MPPAA, because there is no written agreement between Defendant and the Fund manifesting an obligation to contribute to the Fund. ECF No. 44 at 4-5. Defendant argues that its status as an "employer" is a threshold question. Id. at 6.

## LEGAL STANDARD

Congress enacted ERISA to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." Pension Ben. Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 720 (1984). The MPPAA was enacted to protect multiemployer pension plans by imposing obligations on employers withdrawing from the plans. See ILGWU Nat. Re. Fund v. Levy Bros. Frocks, 846 F.2d 879, 880-81 (2d Cir. 1988). "As enacted, the MPPAA requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan, in the form of withdrawal liability." NYSA-ILA Pension Tr. Fund v. Am.

Stevedoring, Inc., No. 12-CV-2506 (PAC), 2013 WL 1234957, at *1 (S.D.N.Y. Mar. 26, 2013) (quoting Pension Ben. Guaranty Corp., 467 U.S. at 725). "The withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefit.'" Id. (quoting Pension Ben. Guaranty Corp., 467 U.S. at 725).

"ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability." Trs. of Laundry Dry Cleaning Workers & Allied Ret. Fund, Workers United v. Oceanside Int'l Indus., Inc., No. 16-CV-06194 (NSR), 2018 WL 1517207, at *1 (S.D.N.Y. Mar. 27, 2018) (quoting Rao v. Prest Metals, 149 F. Supp. 2d 1, 5-6 (E.D.N.Y. 2001)). An employer completely withdraws from a plan when it: "(1) permanently ceases to have an obligation to contribute to a plan or (2) permanently ceases all covered operations under a plan." 29 U.S.C. § 1383(a); ILGWU Nat. Ret. Fund, 846 F.2d at 881. "Whether an employer has withdrawn from a multiemployer plan is a factual dispute within the scope of the MPPAA that must be arbitrated." Trs. of Laundry Dry Cleaning Workers & Allied Ret. Fund, Workers United, 2018 WL 1517207, at *2 (citing New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transportation Co., 848 F.2d 20, 21 (2d Cir. 1988)).

"When an employer withdraws from a multiemployer plan, the entity maintaining the plan must determine the amount of the employer's withdrawal liability, notify the employer of the amount, and make a demand for payment." Id. (citing 29 U.S.C. § 1382). Once the employer receives notice of the demand, it must begin payment in accordance with the schedule within 60 days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2); Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03-CV-4530 (PKC), 2004 WL 67480, at *3 (S.D.N.Y. Jan. 15, 2004).

## DISCUSSION

"To succeed on a claim for interim withdrawal liability payments, a plan sponsor ordinarily needs to show only that it complied with statutory procedural requirements." Trs. of Amalgamated Ins. Fund, 2004 WL 67480, at *2 (citing Bowers of NYSA–ILA Pension Trust Fund v. Transportes Navieros Ecuadorianos (Transvare), 719 F. Supp. 166, 172 (S.D.N.Y. 1989)). Under 29 U.S.C. § 1399, the plan sponsor must: "(1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." Bowers for & on Behalf of NYSA-ILA Pension Tr. Fund, 719 F. Supp. at 172 (discussing the necessary steps for compliance with the statute's procedural requirements) (citing 29 U.S.C. §§ 1382, 1399(b)(1)); see Ret. Plan of Nat. Ret. Fund v. Lackmann Culinary Servs., Inc., No. 10-CV-06316 (VB), 2011 WL 3366354, at *3 (S.D.N.Y. July 29, 2011) (discussing the four-step process to succeed on a claim for withdrawal liability payments).

Further, once the employer receives notice, the employer must begin paying the assessed withdrawal liability within 60 days, regardless of any dispute as to the amount of the liability or payment schedule. See Trs. of Nat'l Ret. Fund v. Fireservice Mgmt. LLC, 384 F. Supp. 3d 412, 421-22 (S.D.N.Y. 2019) (laying out necessary steps under the MPPAA's "pay now-fight later" system). "Default occurs when a withdrawn employer fails to make a payment and fails to cure that deficiency within 60 days." UFCW Loc. 50 Pension Fund v. G & W Food Prods., Inc., No. 20-CV-4751 (AMD) (LB), 2021 WL 3934139, at *4 (E.D.N.Y. Aug. 17, 2021) (citing 29 U.S.C. § 1399(c)(5)(A)), adopted sub nom., 2021 WL 3931351 (E.D.N.Y. Sept. 2, 2021); Board of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.–Pension Fund v. Canny, 900 F. Supp. 583,

5

593 (N.D.N.Y. 1995) (noting that the defendants were in default within meaning of 29 U.S.C. § 1399(c)(5)(A) because they failed to make interim withdrawal liability payments).

Here, Plaintiffs satisfied the four requirements in 29 U.S.C. § 1399(b)(1). As stated in the complaint and the sworn declaration of William Davidian, the Employer Services Director for Plaintiffs, the Fund determined that Defendant triggered a complete withdrawal as of June 30, 2019. ECF No. 1 at ¶ 10; ECF No. 40 at ¶ 6. Plaintiffs assessed withdrawal liability, and on February 13, 2023, the Fund's actuary calculated Defendant's withdrawal liability to be $241,026. ECF No. 1 at ¶ 12; ECF No. 40 at ¶ 7; ECF No. 4-1. On April 3, 2023, the Fund provided notice to Defendant of the Fund's determination that Defendant had completely withdrawn from the Fund as of June 30, 2019, thereby triggering a withdrawal liability of $241,026. ECF No. 1 at ¶¶ 11-12; ECF No. 40 at ¶ 8; ECF No. 40-2. The notice further informed Defendant that the withdrawal liability had to be paid in quarterly installments of $19,393.75 for 13 quarters, plus a final payment of $10,620.18. ECF No. 1 at ¶ 13; ECF No. 40 at ¶ 9; ECF No. 40-2. On July 27, 2023, Plaintiffs sent Defendant a letter alerting Defendant that it had missed payment and demanding payment of the first quarterly installment. ECF No. 1 at ¶ 15; ECF No. 40 at ¶ 11; ECF No. 40-3. The letter also advised Defendant that if the first quarterly installment payment was not received within 60 days, Defendant would be in default, and the entire withdrawal liability would be accelerated. ECF No. 1 at ¶ 15; ECF No. 40 at ¶ 11; ECF No. 40-3. Defendant failed to make the first quarterly installment payment on May 1, 2023, and did not remit payment within 60 days, thereby defaulting under the MPPAA. ECF No. 1 at ¶¶ 14-16; ECF No. 40 at ¶ 11; see also UFCW Loc. 50 Pension Fund, 2021 WL 3934139, at *4 (noting that default occurs when the withdrawn employer fails to make a payment and fails to cure the deficiency within 60 days).

Having met the requirements in 29 U.S.C. § 1399(b)(1), Plaintiffs are thus entitled to interim liability payments. Indeed, courts have consistently held that the employer remains obligated to make interim payments, even while the withdrawal liability claim is being litigated. See Bowers for & on Behalf of NYSA-ILA Pension Tr. Fund, 719 F. Supp. at 173 (concluding that plaintiffs were entitled to interim liability payments because it satisfied the statutory requirements by providing the court with the letter it sent to defendant assessing the withdrawal liability and demanding payment on the schedule); Trs. of Amalgamated Ins. Fund, 2004 WL 67480, at *3 (noting that review of the complaint and relevant affidavit submitted by plaintiff "show[] that the Fund complied with the necessary steps" as required by the 29 U.S.C. § 1399(b) and thus succeeded in its claim for interim withdrawal liability payments); see also Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 609 (E.D.N.Y. 2017) (determining that based on the allegations in plaintiff's complaint, plaintiff met the statutory requirements under ERISA and was entitled to award of interim liability payments).

Defendant does not dispute that Plaintiffs fulfilled the statutory requirements for interim liability payment. Instead, Defendant argues that it is not an employer within the meaning of the MPPAA. ECF No. 44 at 5. Defendant's argument, however, is "properly considered only upon final consideration of the merits of [Plaintiffs'] claims, and do[es] not affect [Plaintiffs'] right to receive interim payments" while this suit is pending. Bowers for & on Behalf of NYSA-ILA Pension Tr. Fund, 719 F. Supp. at 173 (noting that plaintiffs were entitled to interim payments and defendants' claims that it was not an employer under the MPPAA and was not a signatory to the CBA would not be considered until a decision on the merits); see 666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund, No. 12-CV-1251 (BSJ), 2012 WL 1142464, at *1-

2 (S.D.N.Y. Apr. 4, 2012) (concluding that an arbitrator, not the court, must consider plaintiff's continued employer status under the MPPAA and thus ordering plaintiff to continue making interim withdrawal liability payments pending a final decision on the merits).

Further, to the extent Defendant is challenging the imposition of the withdrawal assessment, "[i]t is well-established that an employer who fails to timely invoke MPPAA's mandatory dispute resolution procedures is deemed to have waived all its defenses." Trs. of Hollow Metal Pension Fund v. Morris Fine Furniture Work Shop, Inc., No. 16-CV-09480 (LAK) (KHP), 2019 WL 2526914, at *5 (S.D.N.Y. Mar. 15, 2019), adopted by, 2019 WL 2525413 (S.D.N.Y. June 19, 2019); Finkel v. Athena Light & Power LLC, No. 14-CV-3585 (DLI) (PK), 2016 WL 4742279, at *7 (E.D.N.Y. Sept. 11, 2016) (stating that employer's "failure to arbitrate" pursuant to ERISA "triggers an immediate waiver of the right to contest the withdrawal liability assessment"). Defendant did not initiate arbitration within the statutorily prescribed time period. See ECF No. 41 at 20; ECF No. 44 at 6. It thus appears that Defendant has waived its right to challenge the assessment by review or arbitration. See United Here Workers Pension Fund v. Swan Finishing Co., No. 05-CV-6819 (SAS), 2006 WL 1341301, at *1 (S.D.N.Y. Feb. 10, 2006) (explaining that if an employer fails to initiate arbitration within the statute's prescribed time period, it is "deemed to have defaulted and waived any challenge to the plan sponsor's determination"). Regardless, Plaintiffs are entitled to interim liability payments even while Defendant challenges the imposition of the assessment. See Bowers for and on Behalf of NYSA-ILA Pension Tr. Fund, 719 F. Supp. at 174 (concluding that plaintiffs were entitled to interim payments while defendant contested liability).

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to compel payments of interim withdrawal liability is **GRANTED**. Defendant is directed to make the eight interim payments in the amount of $154,950 within 60 days of this Order and Defendant shall make all additional quarterly installments in accordance with the payment schedule annexed to the April 3, 2023 assessment letter, pending a final resolution of the underlying action.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 38.

**SO ORDERED**

DATED:   New York, New York
         August 15, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge